# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNATHAN L. WOODS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 3:05-0457** |
| | ) | **JUDGE ECHOLS/KNOWLES** |
| CHRISTOPHER TAYLOR, ET AL., | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Plaintiff's Motion for Leave to File an Amended Complaint (Docket No. 50), which was accompanied by Plaintiff's "Memorandum of Law in support of Motion for Leave" (Docket No. 50).[1]  Defendants Brenda Baez, Martin Miller, Kathleen Brown, Emery Smith, Ronald Villaneuva, and Ricky Bell have filed a Response in Opposition to the Motion.  Docket No. 59.

Before addressing the instant Motion and Proposed Amended Complaint, the undersigned believes that a discussion of Plaintiff's original Complaint (Docket No. 1) and a document he later filed that was docketed by the Clerk as an "Amended Complaint" (Docket No. 5),[2] will be helpful.

---

[1]  The first document referenced is headed "Amended Complaint for Leave."  While the document does not specifically seek leave to amend, it does cite Fed. R. Civ. P. 15(a), and Plaintiff's Memorandum of Law evinces Plaintiff's desire for leave to amend.  Thus, the Court will construe the first document referenced as a Motion for Leave to Amend.  The Court notes that this document also constitutes the "Amended Complaint."

[2]  While the referenced document is not headed "Amended Complaint," it contains the statement, "Please add this information with my first Complaint."  Docket No. 5, fifth unnumbered page.  Thus, the Court will refer to this document as Plaintiff's "Amended Complaint."

Plaintiff filed his original pro se Complaint for violation of civil rights under 42 U.S.C. §

1983 on a "fill-in-the-blank" form. Plaintiff listed as Defendants Christopher Taylor (a Corrections

Officer), "Officer Cuten" (a Corrections Officer), "CCO Biaz," "IRC Smitty," and Cpl. Ronald

Villaneuva. The allegations of Plaintiff's Complaint relate to an alleged incident that apparently

occurred March 29, 2005, when Plaintiff was an inmate in the custody of the Tennessee Department

of Correction housed at Riverbend Maximum Security Institution ("RMSI") in Nashville. In his

statement of claim, he averred that Defendant Taylor had come to his cell with a pitcher of boiling

hot water behind his back. Before he could move out of the way, Officer Taylor threw the boiling

water on him. He averred that Officer Taylor was terminated two days later. Docket No. 1, p. 3.

He further averred that Officer Cuten had opened his "pie flap" so that Officer Taylor could

throw the boiling hot water on him. He avers that Officer Cuten was also terminated two days later.

*Id*.

He averred that CCO Biaz was "the one that made the statement for C/Officer Christopher

Taylor to go get the boiling hot water, and get me back, for throwing my tray on the floor." He

averred that CCO Biaz had the intention to cause him bodily harm. CCO Biaz, however, was not

punished. *Id*., p. 3.

With regard to Defendant Villaneuva, Plaintiff stated as follows:

> The Cpl. was in the pod when this brutal act took place towards me
> . . Cpl. Villaneuva turned his back, and act like he didn't see
> anything. . Cpl. Villaneuva call for unauthorize use of force pod
> extraction team. This extraction team was illegal, it was not approve,
> or certified, by The Shift Captain, or unit manager, or warden. Cpl.

---

The Court notes that Plaintiff filed his "Amended Complaint" five days after he filed his
original Complaint, and prior to the filing of a responsive pleading. Thus, Plaintiff was not
required to obtain leave in order to file his "Amended Complaint." Fed. R. Civ. P. 15(a).

> Ronald Villaneuva was sent to the D-Board, and was sentence to
> some days off work, "without pay." .[3]

*Id.*, p. 3 (footnote added).

He further averred that "IRC Smitty" was in the pod watching the "brutal act," that he did not turn his back, and that he watched the whole "incident take place without intentions of telling or trying to stop his C/Officers from attacking me." Plaintiff further averred that IRC Smitty was not punished. *Id.*

Plaintiff demanded "$50,000,00" in compensatory damages, another "$50,000,00" in compensatory damages, "$250,00,00" in punitive damages. Plaintiff also sought that criminal charges be filed against the Defendants and that Plaintiff be awarded "attorney fees." *Id.*, fifth unnumbered page.

In his Amended Complaint, Plaintiff listed the following additional Defendants: "Ricky J. Bell. et al. Warden," "Quiten Wright. et al. Commissioner,"[4] "Martin Miller. et al. Cpl.," and "Brendaz Brown. et al. CCO." Docket No. 5, first unnumbered page. Plaintiff also listed as "Additional Parties – Defendants" the four Defendants he had named in his original Complaint: Christopher Taylor, Ronald Villaneuva, Brenda "Baze,"[5] Emery Smitty and C/O Cuten.[6] Plaintiff's

---

[3] Because Plaintiff's filings contain numerous misspellings and grammatical errors, the Court will not use the designation "*sic*" when quoting Plaintiff's filings.

[4] The Court assumes that Plaintiff intended to sue Quenton White, who formerly was Commissioner of the Tennessee Department of Correction.

[5] The Court believes that Plaintiff intended to refer to the Defendant sued in his original Complaint as "CCO Baiz." It appears that the correct spelling of this Defendant's name is "Baez," and the Court will use that spelling hereinafter.

[6] As with the other Defendants, Plaintiff added the words "et al." after the name of each of these Defendants.

3

Amended Complaint stated in part:

> Each of these name's . . took place in my Complaint . . that led to assault or conspiracy to an assault towards me on . . 3-29-05.
>
> Please add – this information to my original Complaint."

*Id*., first unnumbered page.

Plaintiff's Amended Complaint alleged that Defendant Ricky Bell "conspired with the other staff, employees/defendants most of them any way, that took a part in my case. Also . . "2." was terminated but what about the other defendants?/with conspiracy or linked." *Id.,* fifth unnumbered page.

The Amended Complaint further averred:

> Warden, Ricky J. Bell, is over the RMSI. He can be held reliable for his failure to protect, and said criminal act. Thereby. Warden Ricky J. Bell is hereinwith made a Defendant in the gross negligence in the performance of his duties.

*Id*.

The Amended Complaint also alleged:

> The Complaint is how Commissioner Quiten Wright, and Assistant Commissioner Mike Crutcher and along with the grievance chairperson Sgt. Castile who know of this aggravated attack, to cover up the other Defendants and place a conspiracy in place to ensure all their fellow colleagues/the one's that didn't get caught but was wrong . . Run Free . . like everything was on the two that was terminated. Them officers did not make this hole tragedy act, with intent to cause harm to me . . I Johnathan L. Woods on 3-29-05. By theirselves.

*Id*.

Plaintiff further stated in the Amended Complaint, "I Johnathan L. Woods calling for criminal act charges filed against each of the Defendants acts and/or omissions as complained of herein above." *Id*., sixth unnumbered page.

Plaintiff's Amended Complaint also averred as follows:

> When this aggravated attack took place . . the Nurse was not their .
> . I was given nelosporn by a officer that said. that this come from The
> Nurse. I told this unknown C/O Officer hes "white, that I need to see
> medical because my face, jaw, my hole body is in pain because of
> this incident. I was told by the officers that I don't need medical you
> are okay. You are not hurting . . how these C/Os and CCOs and Cpl.
> know if I'm hurting inside . . they aint inside my body . . I begged,
> and pleaded, for medical examinations on my face and arm. Matter
> fact my hole body from were these officers illegally came in my cell
> 3-0-108 and put their hands and feet on me.
>
> I Johnathan L. Woods ask the Courts to look at my medical
> institution file. The dates is wrong. Completely . . these Nurses, RNs
> and PRNs are trying to cover up some things . . . on my medical
> status . . inciden 3-29-05.

*Id*., seventh unnumbered page.

Plaintiff's Amended Complaint did not make any specific allegations against two of the new
Defendants sued, Cpl. Martin Miller or CCO Brendaz Brown.

Plaintiff's Proposed Amended Complaint, which is the subject of the instant Motion,
specifically references Plaintiff's rights under 42 U.S.C. § 1983, the Eighth Amendment, and the
Due Process Clause. The Proposed Amended Complaint lists the following Defendants: C/O
Christopher Taylor, Cpl. R. Villaneuva, IRC Emery Smith, CCO Brendaliz Beaz (presumably
Brenda Baez), Cpl. Martin Miller, and Warden "Rick Bell." These Defendants were previously
named as Defendants in Plaintiff's Amended Complaint. The Proposed Amended Complaint also
lists a new Defendant, C/O Christopher Cundiff. The Proposed Amended Complaint also lists as
a Defendant CCO Kathleen Brown, who apparently is the same person as Defendant Brendaz
Brown, whom Plaintiff sued in his Amended Complaint. It should also be noted that the Proposed
Amended Complaint does not sue Quenton White or "Officer Cuten."

5

On the second page of his Proposed Amended Complaint, Plaintiff sets forth the heading: "(8ᵗʰ) <u>Issues for Review</u>. (14ᵗʰ)." *Id*., p.2. Under this heading, is the word "amendment." *Id*. After this heading, the Proposed Amended Complaint states as follows:

1. Excessive use of force
2. Racial Discrimination Because He's Black
3. Abuse of authority
4. Amount of force
5. Weapons and Restraints
6. Injury
7. Convicts
8. Tort assault & battery
9. Deliberate * Indifferences

*Id.*

Plaintiff's Proposed Amended Complaint next contains the heading, "<u>State a Claim</u>." *Id.*, p. 3. In that section, Plaintiff essentially repeats his allegations that Defendant Christopher Taylor threw boiling water on him. He refers to that incident as cruel and unusual punishment, assault, excessive use of force, intent to cause bodily harm, and violations of the 8ᵗʰ and 14ᵗʰ Amendments. *Id.*

Plaintiff next avers that Defendant Christopher Cundiff was working in Unit 3-0 pod on March 29 at 11:50 p.m. *Id*., p. 4. Plaintiff avers that Mr. Cundiff was throwing trays on the ground and started calling him "fowl names." He avers, "Mr. Cundiff is the one that opened up my pie flap so Mr. Taylor can throw that <u>boiling "Hot" water on me</u>." *Id.* Liberally read, the Amended Complaint alleges that Defendant Cundiff violated Plaintiff's 8ᵗʰ and 14ᵗʰ Amendment rights by the excessive use of force and committed an assault and battery upon Plaintiff.

Plaintiff next avers that Defendant Martin Miller violated his 8ᵗʰ and 14ᵗʰ Amendment rights and assaulted him. He avers:

> Mr. Miller came in my . . unauthorized cell, <u>Extraction team</u>.  Mr. Miller was present . . and <u>Punch'd</u>, <u>Kick</u>, <u>Stomp'd</u>, while I was <u>already</u> intenave <u>pain</u> from the "<u>boiling, Hot, Water</u>" prior to this incident.
>
> Mr. Miller overlook my <u>unprovoked</u>, <u>unwanted</u>, beating.  But did so any way. with the intentions to cause bodily harm . .

*Id.*, pg. 5.

Plaintiff apparently also avers that Defendant Miller violated the following "policy":

> All forced cell extractions, and/or forced cell entry by correctional officers will be conducted by officer trained in a specific method designed to <u>avoid injury to them selves or the inmate</u>.

*Id.*

Plaintiff further alleges that Defendant Brenda Baez was part of the cell extraction team and that she used an electronic restraint device called "The Shield."  He avers that this device was "used as a weapon," against him, for no reason at all, and was not provoked.  He states that Defendant Baez violated his 8th and 14th Amendment rights and assaulted him.

Plaintiff next avers that Defendant Villaneuva ordered the unauthorized cell extraction. *Id*., p. 6.  He further avers that Defendant Villaneuva "<u>Punch'd</u>, <u>Kick</u>, <u>Stomped,</u> while I'm on the ground . ." *Id*., p. 6.  He avers that Defendant Villaneuva assaulted him "for no reason."  He avers that Defendant Villaneuva "was wrong for approving this extraction team," and he essentially attributes the injuries he allegedly sustained at the hands of the extraction team to Defendant Villaneuva.  He avers that Defendant Villaneuva violated his 8th and 14th Amendment rights.  *Id.*

Plaintiff next avers that Defendant Emery Smith watched the incident but did nothing.  He avers that Defendant Smith violated his 8th and 14th Amendment rights.  *Id.*

7

He avers that Defendant Kathleen Brown videotaped the unauthorized cell extraction. *Id.*, p. 7. He avers that she did nothing to stop other Defendants from injuring Plaintiff. He avers that she engaged in assault, and violated his 8th and 14th Amendment rights.

Plaintiff further avers that Defendant Ricky Bell failed to train and supervise "these officer correctly," and that Defendant Bell "only punish a few officers." *Id.*

Plaintiff further alleges that all Defendants named in the Proposed Amended Complaint were deliberately indifferent, and that they violated Plaintiff's 8th and 14th Amendment rights. *Id.*

Plaintiff also generally reiterates his complaint that he did not receive appropriate medical care for his injuries. *Id.,* p. 8. He refers to an "unknown (Nurse)" who "said no treatment was needed, and no indication of pain." *Id.*

In a section headed "Amount of Force," Plaintiff states "Negligence, (Carelessness), and actual malice, from the Warden Rick Bell at (RMSI)." *Id.*, p. 9. In a section of his Proposed Amended Complaint headed "Tort Assault & Battery 'claim,'" Plaintiff reiterates that Defendant Taylor threw hot water on him with the intent to cause him bodily harm. *Id.*, p. 11. Following this allegation, Plaintiff states, "(Intentional Tort and Negligence)." *Id.*

He further avers that Defendant Cundiff opened the "pie flap" so that Defendant Taylor could throw hot water on him, "with the intent to enforce, the act of the assault with the intent to cause bodily harm. (Intentional Torts and in Negligence)." *Id.*

Plaintiff makes the same statement with regard to Defendant Baez, namely "(Intentional Torts and Negligence)." *Id.* He avers that, by using the Electronic Shield, "for no reason at all," Defendant Baez was guilty of "malice with the intent to cause bodily harm to me . . and assault and battery." *Id.*

8

Finally, Plaintiff's Proposed Amended Complaint seeks compensatory damages from each of the Defendants in the amount of "100.000, 00." *Id.,* p. 12. He seeks punitive damages from each Defendant in the amount of "250,000,00." He seeks arrest warrants for each of the Defendants for assault and battery. Plaintiff further seeks an unspecified declaratory judgment, costs, and attorney fees. *Id.*

Defendants Brenda Baez, Martin Miller, Kathleen Brown, Emery Smith, Ronald Villaneuva, and Ricky Bell object to the Proposed Amended Complaint on two grounds: (1) Plaintiff's equal protection claims under the Fourteenth Amendment are based upon "vague and conclusory allegations," and (2) Plaintiff's request to add state law claims involving negligence should be denied. Docket No. 59. While Defendants make a general request that the Court deny Plaintiff's Motion to Amend apparently in its entirety (Docket No. 59, p. 3), these are the only two specific objections Defendants raise, and they will be discussed in order below.

Initially, Plaintiff is correct that the Court should freely grant leave to amend a Complaint under *Foman v. Davis*, 371 U.S. 178 (1962). Fed. R. Civ. P. 15(a) also provides, "leave [to amend a pleading] shall be freely given when justice so requires." The *Foman* Court, however, recognized that leave to amend need not be granted in cases involving undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. 371 U.S. at 182. It appears that the two specific objections raised by Defendants are both based upon an argument that those amendments would be futile.

First, with regard to the equal protection argument, the Fourteenth Amendment provides in pertinent part that:

9

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious discrimination based on race. *See Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S. Ct. 2963, 2975 (1974). In order to state a cognizable equal protection claim, a § 1983 plaintiff must allege that he/she is a member of a protected class, and that a state actor intentionally discriminated against him/her on the basis of his/her membership in that protected class. *See, e.g., Henry v. Metropolitan Sewer Dist.*, 922 F. 2d 332, 341 (6th Cir. 1990).

It is clear to the Court that Plaintiff has alleged that he is a member of a protected class and that one or more state actors intentionally discriminated against him on the basis of his membership in that class. Read liberally, it appears that Plaintiff is alleging that each of the Defendants took the actions they took, which are specified in the Proposed Amended Complaint, because of discrimination against him on the basis of his membership in a protected class. Thus, Plaintiff has not merely offered a "vague and conclusory statement," but Plaintiff has provided a "factual basis for [his] claims of unconstitutional conduct." Docket No. 59, p. 2. Plaintiff, therefore, has stated an equal protection claim and his attempt to amend his Complaint to assert such a claim would not be futile.

Second, Defendants correctly note that allegations of negligence are not sufficient to state a claim under 42 U.S.C. § 1983. Docket No. 59, p. 3, *citing in part Walker v. Norris,* 917 F.2d 1449, 1454 (6th Cir. 1990). To the extent that Plaintiff attempts to sue Defendants for violations of § 1983

10

based upon negligence, those claims would be futile. Plaintiff may, however, raise pendent state law claims of negligence against Defendants.

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for Leave to Amend his Complaint be GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion should be DENIED, to the extent that Plaintiff seeks to base any of his § 1983 claims upon Defendants' negligence. In all other respects, however, Plaintiff's Motion to Amend his Complaint should be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

E. Clifton Knowles
United States Magistrate Judge

11